# IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI
# AT SPRINGFIELD

| | |
|---|---|
| MARY DELOZIER, Individually and as Personal Representative and Heir to the estate of Jackie O. DeLozier, Deceased, MARK DELOZIER, Individually and as Heir to the Estate of Jackie O. DeLozier, and MATT DELOZIER, Individually And as Heir to the Estate of Jackie O. DeLozier | Case No.: |
| | Division No.: |
| *Plaintiffs*, | |
| vs. | |
| SNORKEL INTERNATIONAL, LLC, SNORKEL INTERNATIONAL HOLDINGS, LLC, DOES 1-10, AND, ROE COMPANIES 1-10, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## PETITION

COMES NOW, Plaintiffs Mary DeLozier, Individually and as Personal Representative and Heir to the estate of Jackie DeLozier, Deceased, Mark DeLozier, Individually and as Heir to the Estate of Jackie O. DeLozier, and Matt DeLozier, Individually and as Heir to the Estate of Jackie O. DeLozier (collectively, "Plaintiffs"), and complain against Defendants and each of them as follows:

### THE PARTIES

1. At all times relevant hereto, Plaintiff Mary DeLozier was a resident of the County of Greene, State of Missouri, and was the wife and legal heir to the estate of Jackie O. DeLozier, deceased.

2. Plaintiff Mark DeLozier is the son, and legal heir, to Jackie O. DeLozier and at all times herein relevant was a resident of the County of Greene, State of Missouri.

1

3. Plaintiff Matt DeLozier is the son, and legal heir, to Jackie O. DeLozier and at all times herein relevant was a resident of the County of Bexar, State of Texas.

4. At all times relevant hereto, Defendant SNORKEL INTERNATIONAL LLC, was organized and existing under the laws of the State of Nevada. Defendant SNORKEL INTERNATIONAL, LLC is registered with the Secretary of State in Missouri as a Foreign Limited Liability Company, licensed and doing business in Greene County, Missouri. SNORKEL INTERNATIONAL, LLC may be served through their registered agent, Incorp Services, Inc., located at 2847 S INGRAM MILL RD, STE A100 Springfield, MO 65804.

5. At all times relevant hereto, Defendant SNORKEL INTERNATIONAL HOLDINGS LLC, was organized and existing under the laws of the State of Nevada. Defendant SNORKEL INTERNATIONAL HOLDINGS, LLC is registered with the Secretary of State in Nevada as a Domestic Limited Liability Company, licensed and doing business in Clark County, Nevada. On information and belief, SNORKEL INTERNATIONAL HOLDINGS, LLC has or does engage in business in Greene County, Missouri, and may be served through their registered agent, Incorp Services, Inc., located at 3773 Howard Hughes Pkwy Ste 500S, Las Vegas, NV, 89169-6014.

6. Collectively, the above Defendants are referred to as Snorkel.

7. DOES 1 through 100 are persons whose conduct gives rise to this Complaint; specifically, these DOE Defendants are individuals who participated in the conduct alleged herein, whether by the design, redesign, recall, manufacture, marketing, distributing, assembling, promoting, preparing warnings and manuals, or installation of any product or component thereof, including but not limited to the Snorkel lift at issue herein, that contributed to the cause of the subject product design, warnings, failure to recall, failure to retrofit, and or product failure and

death of Jackie O. DeLozier, but their identities are unknown as this time; Plaintiffs reserve the right to amend this Complaint to specifically name these individuals when their identities are ascertained.

8. ROE CORPORATIONS 1 through 100 are business entities whose conduct gives rise to the allegations of the Complaint contained herein; specifically, these business entities participated in the conduct alleged herein, whether by the design, redesign, recall, manufacture, marketing, distributing, assembling, promoting, preparing warnings and manuals, or installation of any product, including but not limited to the Snorkel lift at issue herein, that contributed to the cause of the subject product design, warnings, failure to recall, failure to retrofit, and or product failure and death of Jackie O. DeLozier, but their identities are unknown as this time; Plaintiffs reserve the right to amend this Complaint to specifically name these individuals when their identities are ascertained.

9. That the true names and capacities, whether individual, corporate, associations or otherwise, of the Defendant DOES 1 through 10, and/or Defendant ROE CORPORATIONS 1 through 10, inclusive, are presently unknown to Plaintiffs who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe, and thereupon alleges, that each of the Defendants designated herein as DOES 1 through 10 and/or ROE CORPORATIONS 1 through 10 are responsible in some manner for the events or happenings referred to herein, including, but not limited to, the negligent design, testing, manufacturing, assembling, marketing, promotion, safety surveillance, and/or distribution of Defendants' unreasonably dangerous and defective scissor lift product, including its component parts and designs, and further negligently failed to warn users of the unsafe scissor lift product that caused or contributed to Plaintiffs' injuries and damages as herein alleged and that Plaintiffs will ask leave of this Court to amend this Complaint

to insert the true names and capacities of said Defendants DOES 1 through 10 and/or ROE CORPORATIONS 1 through 10, inclusive, when the same have been ascertained by Plaintiffs, together with the appropriate charging allegations, and to join such Defendants in this action.

10. The Snorkel, Doe, and Roe Defendants shall collectively be referred to as Defendants herein.

### GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

11. On or about October 2, 2018, Jackie O. DeLozier (hereinafter, "Decedent"), was performing work on a 2009 Snorkel S1930 scissor lift (the "Snorkel Lift") at the Woods Supermarket in Bolivar, Missouri.

12. Snorkel, and/or other Defendants, are in the business of designing, testing, manufacturing, assembling, marketing, maintaining, and distributing the Snorkel Lift. Plaintiffs believe that Defendants, designed, tested, manufactured, assembled, marketed, placed in the stream of commerce, and assembled the various components of the subject Snorkel Lift.

13. The Snorkel Lift, through defects in its overall design, testing, manufacturing, assembly, or warning and through defects in its component parts' design, manufacturing, assembly, or warning, failed. These failures, and/or the Defendants' refusal to repair or correct them, resulted in the Snorkel Lift engaging in unintended and unexpected upward motion, in violation of ANSI standards, that resulted in the death of Jackie O. DeLozier.

14. On or about October 2, 2018, the Snorkel Lift and its component parts thereby acted in an unexpected and unreasonably dangerous manner while being used as intended by its designers and manufacturers in that the Snorkel Lift engaged in unintended upward motion, resulting in Jackie O. DeLozier being propelled into the ceiling of the Woods Supermarket, pinning him between the lift and the ceiling.

15. In the wake of the Snorkel Lift's failure, paramedics were contacted, and they transported Jackie O. DeLozier to Citizens Memorial Hospital in Bolivar, MO. Due to the grave nature of his injuries, Jackie O. DeLozier was transported via air flight to Mercy Hospital in Springfield, MO. During this time, Jackie O. DeLozier was alive and in extreme mental and physical pain and suffering.

16. Jackie O. DeLozier received treatment at Mercy Hospital from October 2, 2018 until October 3, 2018.

17. As a direct and proximate result of the conduct of each of the Defendants, Jackie O. DeLozier was unable to recover, and on October 3, 2018, died as a result of his injuries.

18. As a direct and proximate result of the conduct of each of the Defendants, Jackie O. DeLozier sustained personal injuries and wrongful death and has sustained damages including, but not limited to, past physical pain and suffering; past mental pain and suffering; past loss of enjoyment of life; past medical expenses; and such other damages as will be proven at the time of trial.

19. As a direct and proximate result of the conduct of each of the Defendants, Mary DeLozier, the wife of Jackie O. DeLozier, sustained damages as a result of the injuries and death of her late husband, as well as for past and future mental pain and suffering, and past and future loss of society and companionship, and other damages as outlined herein.

20. As a direct and proximate result of the conduct of each of the Defendants, Mark and Matt DeLozier, the sons of Jackie O. DeLozier, sustained damages as a result of the injuries and death of their father, as well as for past and future mental pain and suffering, and past and future loss of society and companionship, and other damages as outlined herein.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this matter because the amount in controversy is within the jurisdictional limits of this Court.

22. Venue is proper in this Court under R.S.Mo. § 508.010 because the events giving rise to this matter occurred in Greene County, Missouri and Plaintiffs were first injured by the wrongful acts or negligent conduct alleged in this action in Greene County, Missouri.

## FIRST CAUSE OF ACTION
### (NEGLIGENCE)

23. Plaintiffs re-allege the paragraphs above as if fully stated herein.

24. Defendants and each of them negligently designed, tested, manufactured, assembled, marketed, provided warnings, instructions for use, maintained, and distributed the subject Snorkel Lift and its component parts by failing to ensure that when used in a reasonably foreseeable manner that it would operate as reasonably expected by the Decedent and that the Snorkel Lift would not engage in unintended motion when used as intended.

25. Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, marketing, warnings, instructions, maintenance, promotion, distribution and sale of the Snorkel Lift so as to avoid exposing others, including Plaintiffs herein, to foreseeable and unreasonable risks of harm.

26. Defendants knew or reasonably should have known that the Snorkel Lift was dangerous or was likely to be dangerous when used in its intended or a reasonably foreseeable manner.

27. Defendants breached their duty of due care by their negligent, careless, wanton, willful, and indifferent failure to act including, but not limited to, the negligent and improper design, testing, manufacture, inspection, construction, maintenance, marketing, and distribution of

the Snorkel Lift and its component parts; and the failure to fix known issues, provide adequate, accurate, and effective warnings and instructions to owners, operators, and users, including Decedent. Namely, among other ways, the Defendants breached their duty by the following acts and omissions:

a. Failing to design the Snorkel Lift in way that would prevent unintended motion;

b. Failing to guard the joystick on the Snorkel Lift;

c. Failing to recall and retrofit the joystick on the Snorkel Lift;

d. Failing to perform reasonable pre- and post-market testing and or surveillance of the Snorkel Lift to determine whether or not the product was safe for its intended use;

e. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

f. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other lifts available for the same purpose;

g. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical scissor lifts;

h. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, or the general community of distributors and users, about the Snorkel Lift's substantially dangerous condition or about facts making the product likely to be dangerous;

7

      i. Failing to design a lift that would engage in motion as expected by a typical user of such lifts;

      j. Failing to provide adequate instructions, guidelines, notices, and safety precautions, including pre and post-sale, to those persons to whom it was reasonably foreseeable would use the Snorkel Lift; and

      k. Failing to build the Snorkel Lift in a way that complied with ANSI standards and specifications, while at the same time, representing to users and the public at large that the Snorkel Lift was made to said specifications.

28. Upon information and belief, at the time of the aforesaid accident, the subject Snorkel Lift and its component parts were in the same condition as when they left the control of Defendants who manufactured them and was being used without any substantial change or alteration in its condition.

29. A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

30. As a direct and proximate result of Defendants' negligent and/or intentional conduct, Jackie DeLozier and his heirs each suffered pecuniary damages for their grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent.

31. As a direct and proximate result of Defendants' negligent and/or intentional conduct, the Estate of Jackie DeLozier, Deceased, suffered special damages including, but not limited to, medical, funeral and similar expenses.

32. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein

incurred, attorneys' fees, and all relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (STRICT PRODUCTS LIABILITY – DESIGN DEFECT)

33. Plaintiffs re-alleges the paragraphs above as if fully stated herein.

34. At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, sold, maintained, and distributed the Snorkel Lift (as described throughout this complaint) that was used by Decedent.

35. The Snorkel Lift was expected to and did reach the usual consumers, handlers, and persons using it without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

36. At those times, the Snorkel Lift was in an unsafe, defective, and unreasonably dangerous condition, which was dangerous to users, and in particular, Decedent herein.

37. The Snorkel Lift designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design.

38. The Snorkel Lift designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design, in that, when it left the hands of Defendants or its manufacturers and/or suppliers, it was unreasonably dangerous, unreasonably dangerous in normal use, and it was more dangerous than an ordinary consumer would expect.

39. At all relevant times, the Snorkel Lift was in a defective condition and unsafe, and Defendant knew or had reason to know that it was defective and unsafe, especially when used in the manner as provided by Defendants. In particular, the Snorkel Lift was defective in the

9

following ways, among others:

    a. When placed in the stream of commerce, Defendant's scissor lift products were defective in design and, consequently, dangerous to an extent beyond that which an ordinary consumer would anticipate.

    b. When placed in the stream of commerce, Defendant's scissor lift products were unreasonably dangerous in that they were hazardous and posed a grave risk of serious injury and death when used in a reasonably anticipated manner.

    c. When placed in the stream of commerce, Defendant's scissor lift products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated manner.

    d. Defendants did not sufficiently test, investigate, maintain, or study its Snorkel Lift products.

    e. As designed, the Snorkel Lift presents a risk of harm that outweighs any potential utility stemming from the use of the lift.

    f. Defendants knew or should have known at the time of marketing the Snorkel Lift product that routine and anticipated use of the product could result in serious injuries or death.

    g. Defendants did not conduct adequate post-marketing maintenance or surveillance of the Snorkel Lift and related scissor lifts.

40. Defendants knew, or should have known, that at all times herein mentioned its Snorkel Lift was in a defective condition and was and is inherently unsafe.

41. Decedent purchased and used Defendant's Snorkel Lift without knowledge of its dangerous characteristics.

10

Case 6:21-cv-03305-LMC   Document 1-2   Filed 11/24/21   Page 10 of 19

Electronically Filed - Greene - September 28, 2021 - 01:43 PM

42. At the time of Decedent's use of the Snorkel Lift, it was being used for the purposes and in a manner normally intended, as an aerial lift.

43. Armed with this knowledge, Defendants voluntarily designed their scissor lifts with a dangerous condition for use by the public generally, and in particular, by the Decedent.

44. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

45. Defendants created a product that was and is unreasonably dangerous for its normal, intended use.

46. Defendants marketed and promoted a product in such a manner so as to make it inherently defective as the product downplayed its suspected, probable, and established injury risks inherent with its normal, intended use.

47. The Snorkel Lift designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured and designed defectively in that the Snorkel Lift left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

48. The Snorkel Lift designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached its intended users in the same defective and unreasonably dangerous condition in which Defendant's scissor lifts, and in particular, the Snorkel Lift, was manufactured.

49. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product, which created an unreasonable risk of injury and death to its users, and to Decedent in particular, and Defendants are therefore strictly liable for the injuries sustained by Decedent and Plaintiffs.

50. Decedent could not, by the exercise of reasonable care, have discovered the Snorkel Lift's defects herein mentioned or perceived its danger.

51. Defendants are thus strictly liable to Plaintiffs for the manufacturing, designing, marketing, promoting, distribution, and selling of a defective product, the Snorkel Lift.

52. Defendant's defective design of the Snorkel Lift amounts to willful, wanton, and/or reckless conduct.

53. Defects in Defendant's Snorkel Lift were the cause or a substantial factor in causing Decedent's injuries, including his death.

54. As a result of the foregoing acts and omissions, Decedent suffered severe and personal injuries that resulted in his death, physical pain, and mental anguish. Further, as a result of the foregoing acts and omissions, Plaintiffs lost their loved one, his financial support, his companionship and society, his household services, and incurred financial expenses for hospitalization, medical care, and funeral expenses.

55. As a direct and proximate result of Defendants' negligent and/or intentional conduct, Jackie DeLozier and his heirs each suffered pecuniary damages for their grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent.

56. As a direct and proximate result of Defendants' negligent and/or intentional conduct, the Estate of Jackie DeLozier, Deceased, suffered special damages including, but not limited to, medical, funeral and similar expenses.

57. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (PRODUCTS LIABILITY – FAILURE TO WARN)

58. Plaintiffs re-alleges the paragraphs above as if fully stated herein.

59. Defendants have engaged in the business of selling, testing, distributing, supplying, manufacturing, designing, marketing, and/or promoting the Snorkel Lift, and through that conduct have knowingly and intentionally placed the Snorkel Lift into the stream of commerce with full knowledge that it reaches consumers such as Decedent who are subjected to injury and death through ordinary and reasonably foreseeable uses.

60. Defendants did in fact sell, distribute, supply, design, manufacture, and/or promote the Snorkel Lift to Decedent. Additionally, Defendants expected the Snorkel Lift it was selling, distributing, supplying, designing, manufacturing, and/or promoting to reach – and the Snorkel Lift did in fact reach – consumers, including Decedent, without any substantial change in the condition of the product from when it was initially distributed by Defendants.

61. At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of the Snorkel Lift because it knew or should have known of the unreasonable risks of harm associated with the use of such products.

62. At all relevant times, the Snorkel Lift was defective and unsafe in manufacture such that it was unreasonably dangerous to the user and was so at the time it was distributed by Defendants, including when Decedent used the product. The defective condition of the Snorkel Lift was due in part to the fact that it was not accompanied by proper warnings regarding its potential to cause serious injury and death through unintended motion, among other defects.

63. Defendant could have revised the Snorkel Lift's user manual and or warnings placed directly on the scissor lift to provide additional warnings.

64. This defect caused serious injury and death to Decedent, who used the Snorkel Lift

in its intended and foreseeable manner.

65. At all relevant times, Defendants had a duty to properly design, manufacture, test, inspect, package, label, distribute, market, examine, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous risks.

66. Defendants designed, labeled, distributed, and promoted a product that was dangerous and unsafe for the use and purpose for which it was intended.

67. Defendants failed to warn of the nature and scope of the injury risks associated with the Snorkel Lift, namely its propensity to engage in unintended motion and to cause or serve as a substantial contributing factor in serious injuries and death.

68. Defendants knew of the probable consequences of use of their Snorkel Lift. Despite this fact, Defendants failed to exercise reasonable care to warn of the dangerous properties and risks of using the Snorkel Lift, even though these risks were known or reasonably knowable at the time of distribution. Defendants willfully and deliberately failed to avoid the consequences associated with their failure to warn, and in doing so, acted with conscious disregard for Decedent's safety.

69. At the time of using the Snorkel Lift, Decedent could not have reasonably discovered any defect in the lift through the exercise of reasonable care.

70. Defendants, as the manufacturer and/or distributor of the Snorkel Lift, are held to the level of knowledge of an expert in the field.

71. Decedent reasonably relied on the skill, superior knowledge, and judgment of Defendants.

72. Had Defendants properly disclosed the risks associated with the Snorkel Lift, Decedent would have avoided the risk by not using the Snorkel Lift.

73. The information that Defendants provided failed to contain adequate warnings and precautions that would have enabled Decedent to utilize the product safely and with adequate protection and knowledge of the risks. Instead, Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use of the Snorkel Lift; continued to promote the safety and utility of the Snorkel Lift, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, and or by omission and failure to recall, any information about the risks and dangers of using the Snorkel Lift.

74. To this day, Defendants have failed to adequately warn of the true risks of injuries and death associated with the use of the Snorkel Lift.

75. As a result of its inadequate warnings, Defendant's scissor lift products, including the Snorkel Lift, were defective and unreasonably dangerous when they left Defendant's possession and/or control, were distributed by Defendant, and used by Decedent.

76. As a direct and proximate result of Defendant's actions as alleged herein, and in such other ways to be later shown, the subject product caused Decedent to sustain injuries as herein alleged.

77. As a direct and proximate result of Defendants' negligent and/or intentional conduct, Jackie DeLozier and his heirs each suffered pecuniary damages for their grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent.

78. As a direct and proximate result of Defendants' negligent and/or intentional conduct, the Estate of Jackie DeLozier, Deceased, suffered special damages including, but not

limited to, medical, funeral and similar expenses.

79. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (LOSS OF CONSORTIUM)

80. Plaintiffs re-alleges the paragraphs above as if fully stated herein.

81. At all times mentioned herein, Plaintiff, Mary DeLozier, was the wife of Jackie DeLozier.

82. That by reason of the injuries sustained by Jackie DeLozier, as herein above alleged, Plaintiff, Mary DeLozier, has suffered, and will continue to suffer the loss of services of her husband, and his comfort and happiness in his society and companionship have been lost, and Plaintiff, Mary DeLozier, has suffered and will continue to suffer emotional distress and loss of consortium since the date of the incident in that her husband was killed as a result of the Defendant's acts and omissions alleged herein, all to damages in an amount in excess of one million dollars ($1,000,000.00).

83. That by reason of the injuries sustained by Jackie DeLozier, as herein above alleged, Plaintiffs, Mark and Matt DeLozier, have suffered, and will continue to suffer the loss of services of their father, and his comfort and happiness in his society and companionship have been lost, and Plaintiffs, Mark and Matt DeLozier, have suffered and will continue to suffer emotional distress and loss since the date of the incident in that their father was killed as a result of the Defendant's acts and omissions alleged herein, all to damages in an amount in excess of one million dollars ($1,000,000.00).

84. As a result of Defendants' conduct and/or the defects in the subject product(s), as

set forth herein, Plaintiff has been required to retain the services of an attorney, and as direct, natural, and foreseeable consequence thereof, has been damaged thereby, and is entitled to reasonable attorneys' fees and costs.

85. As a direct and proximate result of Defendants' negligent and/or intentional conduct, Jackie DeLozier and his heirs each suffered pecuniary damages for their grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent.

86. As a direct and proximate result of Defendants' negligent and/or intentional conduct, the Estate of Jackie DeLozier, Deceased, suffered special damages including, but not limited to, medical, funeral and similar expenses.

87. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all relief as this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(CLAIM FOR PUNITIVE DAMAGES)**

88. Plaintiffs re-alleges the paragraphs above as if fully stated herein. The facts stated hereinabove support an award of punitive damages against the Defendants.

89. Defendants have acted willfully, wantonly, maliciously, with an evil motive, and recklessly in one or more of the following ways:

    a. Defendants knew of the unreasonably high risk of injury and death posed by the Snorkel Lift products before manufacturing, marketing, distributing, and/or selling the lift products, yet purposefully proceeded with such action;

    b. Despite its knowledge of the high risk of injury and death associated with use of the Snorkel Lift products, Defendants affirmatively minimized this risk through

        marketing and promotional efforts and product labeling, and failed to implement safe designs and/or correct existing, known unsafe designs; and

    c. Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of their Snorkel Lift products, including Decedent.

90. Defendants knew of the dangers and risks of their Snorkel Lift products, yet they concealed and/or omitted this information from labels and warnings contained on their lift products in furtherance of their knowing and willful actions.

91. Defendants willfully manufactured, distributed, and sold a defective product.

92. These actions were outrageous because of Defendant's evil motive or a reckless indifference to the safety of users of Snorkel Lift products.

93. As a direct and proximate result of the willful, wanton, malicious, evilly-motivated and/or reckless conduct of Defendants, Plaintiffs have sustained damages as set forth above.

94. WHEREFORE, Plaintiffs respectfully requests judgment of punitive damages against Defendants in a fair and reasonable amount sufficient to punish Defendants and deter it and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

95. Plaintiffs hereby demand trial by jury as to all issues.

### PRAYER FOR ALL OTHER DAMAGES

**WHEREFORE**, Plaintiffs pray for relief and judgment against Defendants as follows:

1. Pecuniary Damages for each heir in an amount in excess of $1,000,000.00;
2. Special Damages for the Estate in an amount in excess of $1,000,000.00;
3. Punitive or Exemplary Damages in an amount to be proven at trial;
4. Cost of suit, pre-judgment interest, post-judgment interest, attorney's fees;

5. Judgment to be entered against all defendants, and each of them jointly and severally, on all causes of action of this Complaint in an amount in excess of $1,000,000.00; and

6. For such other and further relief as may be just and proper.

DATED this ____ day of September 2021

Respectfully Submitted,

                          **PAUL LLP**

                          _/s/ *Ashlea G. Schwarz*_

Richard M. Paul III (Mo. Bar 44233)
Ashlea G. Schwarz (Mo. Bar 60102)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Phone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com

**THOMPSON LAW LLP**

Ryan H. Anderson (*pro hac to be filed*)
Texas Bar No. 24059380
Ryan L. Thompson (*pro hac to be filed*)
Texas Bar No. 24046969
3300 Oak Lawn Ave., Ste. 300
Dallas, Texas 75219
214.755.7777 (Office)
214.716.0116 (Fax)
RAnderson@TrialLawyers.com
RThompson@TrialLawyers.com

*Attorneys for Plaintiffs*